# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * * * * *
JAMES R. FURNISS, JR.,                    *        No. 14-481V
                                          *        Special Master Christian J. Moran
                    Petitioner,           *
                                          *
v.                                        *
                                          *        Filed: July 15, 2015
SECRETARY OF HEALTH                       *
AND HUMAN SERVICES,                       *        Finding of Fact; onset; numbness
                                          *        in hands.
                    Respondent.           *
* * * * * * * * * * * * * * * * * * * * * * * *
```

<u>Maximillian J. Muller</u>, Muller Brazil, LLP, Philadelphia, PA, for petitioner;
<u>Claudia B. Gangi</u>, United States Dep't of Justice, Washington, DC, for respondent.

## FINDING OF FACT[1]

On June 4, 2014, James R. Furniss, Jr., filed a petition alleging that an influenza vaccine, given to him on January 14, 2013, caused him to develop chronic inflammatory demyelinating polyneuropathy (CIDP).  The medical records contain abundant support for the diagnosis of CIDP and the Secretary does not challenge that Mr. Furniss suffers from that disease.  However, the record contains conflicting information about when Mr. Furniss experienced the first symptoms of CIDP.  To resolve this factual conflict, a hearing was held in Memphis, Tennessee on June 17, 2015.

After considering the record as a whole, I find that Mr. Furniss first experienced numbness in his hands on January 17, 2013.  The reasons for this finding are explained below.

The finding that numbness began on January 17, 2013 fits within the chronology of undisputed events.  The parties agree that on December 20, 2012,

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this ruling on its website.  Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4).  Any redactions ordered by the special master will appear in the document posted on the website.

Mr. Furniss had a microdiscetomy.  Exhibit 1 at 88.  On January 4, 2013, he saw the doctor in follow up for his operation.  Id. at 19.  On January 14, 2013, he received an influenza vaccination.  Exhibit 2.  On January 25, 2013, he saw a neurologist, exhibit 1 at 13, and on January 29, 2013, he was hospitalized, id. at 11. The issue resolved herein is when the numbness for which he saw the neurologist and he was hospitalized began.

## Standards for Adjudication

The standards for resolving findings of fact are sufficiently established that they need not be repeated here.  For a detailed account, see Bayless v. Sec'y of Health & Human Servs., No. 08-679V, 2015 WL 638197, at *2 (Fed. Cl. Spec. Mstr. Jan. 15, 2015).

## Summary and Evaluation of the Evidence

Although records created contemporaneously with the events being described are presumed to be accurate, Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993), this principle is not absolute. Campbell v. Sec'y of Health & Human Servs., 69 Fed. Cl. 775, 779 (2006).  Here, the medical records created at the end of January 2013 are not entirely consistent.

For example, medical records created on January 29, 2013 — which is the day Mr. Furniss was admitted to the hospital — provide three slightly different dates of onset.  First, at the emergency department, the nurse completing a triage form stated that Mr. Furniss's numbness began about two weeks ago.  Exhibit 3-2 at 296 / pdf 87.  If this history is correct and if "two weeks" means precisely 14 days, then the onset of Mr. Furniss's hand numbness was January 15, 2014.  See Tr. 84.  Second, while still in the emergency department, Mr. Furniss provided another history.  Dr. Leonard Jefferson Harris, Jr. recorded that Mr. Furniss has "numbness in hands for 2 weeks that has moved into his feet."  Exhibit 3-2 at 327 / pdf 118.  Because there is no information about how long the numbness has been in Mr. Furniss's feet, it is not entirely clear whether the numbness started 14 days earlier.  Third, after Dr. Harris admitted Mr. Furniss to the hospital from the emergency department, Mr. Furniss saw a neurology resident who obtained a third history.  According to Dr. Muneer Hassan's record, Mr. Furniss was "well after the procedure until January 4, 2013, when he began to develop tingling and numbness in his hands and feet."  Exhibit 3-2 at 321 / pdf 112; see also Tr. 123-24.

These three records were created within hours of each other.  Each is as "contemporaneous" to the events in question as the next.  On their face, there does not appear to be any reason for crediting one of these records over another record.  Thus, in determining the onset of Mr. Furniss's numbness, it is not possible to follow the presumptive  rule of thumb that medical records created contemporaneously are correct.

When the contemporaneously created medical records are in conflict, other sources of information should be considered.  Here, the record includes travel documents and Mr. Furniss's testimony.

Mr. Furniss produced travel documents showing that between January 4, 2013 and January 18, 2013, he went on two trips.  First, Mr. Furniss's wife and he drove from their house near Memphis to their son's home in Louisville, Kentucky, where they stayed in a hotel.  The reason for their trip was to help their son's family move.  Exhibit 14 at 4-5; Tr. 29-30.  The trip was approximately 300 miles and about 6-7 hours to drive.  Tr. 109.  According to Mr. Furniss's testimony, he had recovered from his microdiscetomy enough to be tasked with disassembling items, such as beds.  When he occasionally attempted to carry items to the moving truck, his wife reminded him to limit his activities.  Tr. 30.

Mr. Furniss's second trip was to San Francisco, California for a conference relating to his job.  He departed, by plane, on Tuesday, January 15, 2013, and returned, also via plane, on Thursday, January 17, 2013.  Exhibit 14 at 10-11; Tr. 31-36.  In the middle, Mr. Furniss presented a talk.  Mr. Furniss placed the onset of numbness in his hands on January 17, 2013.  He recalled speaking to his wife on the telephone from San Francisco and telling his wife that he was having a new type of problem.  Before the disc surgery, his problems were in his legs.  Now, his problems were in his hands.  Tr. 34, 39, 142-43.

The two trips are significant because they tend to show that Mr. Furniss was functioning pretty well.  Although he had had a disc surgery at the end of December 2012, exhibit 1 at 88; Tr. 21-22, he was recovering and his surgeon expected additional improvements.  Exhibit 1 at 19; Tr. 24-25.  He felt comfortable enough to sit in a car for many hours and, then a few days later, to travel for several hours by plane.  Tr. 30.  He would have been less likely to take these trips if he was having continual numbness in his hands.  See Tr. 76-77.  His actions speak louder than words.

Mr. Furniss's words include telling Dr. Wright, on January 25, 2013, that "about three weeks ago he awakened one morning with a numb feeling in his hands." Exhibit 1 at 13. If three weeks means exactly 21 days, then the onset of numbness would be January 4, 2013. This onset corresponds to the history that Dr. Hassan recorded in Methodist Hospital on January 29, 2013. Exhibit 3-2 at 321 pdf 112.[2] In Mr. Furniss's testimony, he explained that although he probably said "about three weeks ago" to Dr. Wright, his recollection at that time was not accurate. He was anxious about his health, particularly concerned that the surgery actually created a new problem. See Tr. 39-40. He also provided the history to Dr. Wright without the benefit of looking at his calendar. His explanation of why Dr. Wright's medical record contains an error was compelling. Tr. 56-58; see also Tr. 84.

It bears repeating that on January 29, 2013, only four days after the appointment with Dr. Wright, Mr. Furniss told the triage nurse that the numbness started two weeks ago. Exhibit 3-2 at 296 / pdf 87. The inconsistencies in the medical records suggest that Mr. Furniss was not an absolutely precise historian in January 2013.[3]

In short, the most persuasive evidence supports a finding that Mr. Furniss woke on January 17, 2013 with numbness in his hands. He testified that he called his wife before leaving San Francisco to tell her about his symptoms and his departure time (1:17 PM) would allow an early morning call home. Tr. 89; exhibit 14 at 10 (flight schedule). January 17, 2013 is also relatively consistent with the reports at the emergency room on January 29, 2013, which stated that he was having numbness for about two weeks.

---

[2] The Secretary relies upon the multiple references to January 4, 2013, for asserting that the onset began on January 4, 2013. Although these records provides a basis for the Secretary's argument, the weight of the evidence taken as a whole suggests that the numbness began after January 4, 2013.

[3] Part of the inconsistency may derive from the vagueness in Mr. Furniss's choice of words. Phrases like "about two weeks ago" (record of triage nurse) or "about three weeks ago" (record of Dr. Wright) are estimates. They inform the medical staff that (a) the numbness did not start acutely within the last day, and (b) the numbness was not a long-standing problem that had been affecting Mr. Furniss for months or years. See Tr. 75. Thus, from a medical perspective either "about two weeks ago" or "about three weeks ago" probably has the same meaning. But, from a legal perspective for a claim in the Vaccine Program, the difference between "about two weeks ago" and "about three weeks ago" is very important in relation to the date of vaccine.

**Conclusion**

The parties are ordered to provide this ruling to any expert whom they retain.  Expert opinion inconsistent with these findings of fact is not likely to be persuasive.  See Burns v. Sec'y of Health & Human Servs., 3 F.3d 415, 417 (1993) (holding that the special master did not abuse his discretion in refraining from conducting a hearing when the petitioner's expert "based his opinion on facts not substantiated by the record");  Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1376 n.6 (Fed. Cir. 1994) ("An expert opinion is no better than the soundness of the reasons supporting it."); see also Bradley v. Sec'y of Health & Human Servs., 991 F.2d 1570, 1574 (Fed. Cir. 1993) (the assumption of an expert about the accuracy of a fact witness's testimony does not "substantiate" the fact witness's testimony).

A status conference is set, sua sponte, for **Monday, August 10, 2015 at 10:00 A.M Eastern Time**.  The parties should be prepared to propose the next step in this case.

Any questions may be directed to my law clerk, Mary Holmes, at (202) 357-6360.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master